UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OZIE C. CARGILE, II,　　　　　　　　　　　　No. 09-14317

　　　　Plaintiff,　　　　　　　　　　　　　　District Judge Gerald E. Rosen

v.　　　　　　　　　　　　　　　　　　　　　Magistrate Judge R. Steven Whalen

JP MORGAN CHASE & CO.,

　　　　Defendant.
　　　　　　　　　　　　　　　　　　　　　　/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion for Summary Judgment [Docket #20][1], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Defendant's motion be GRANTED, and the complaint DISMISSED WITH PREJUDICE.[2]

**I.　BACKGROUND**

Mr. Cargile, a graduate of the University of Michigan School of Music, is a professional musician and composer. *Complaint*, ¶ 12. Between September 9, 2009 and October 20, 2009, he had three checking accounts with Defendant JP Morgan Chase Bank, N.A. ("Chase"). *Id*. ¶ 19. During that time, he wrote a number of checks with insufficient funds in the account to cover the amounts written. According to a chart Mr. Cargile included within his Complaint, the total amount of insufficient funds was $286.85. *Id*.¶ 22. As a result, Chase charged him "insufficient funds" fees and "extended

---

[1] The Memorandum in Support, along with Defendant's exhibits, has been filed separately under Docket #21.

[2] In response to Defendant's motion, Plaintiff filed a Motion to Strike Defendant's Motion for Summary Judgment [Docket #23]. Although I will deny that motion by separate order, I will nevertheless consider it as a response to the Defendant's motion.

overdraft fees" totalling $852.00, in amounts ranging from $25.00 to $35.00 per check. *Id.* ¶¶ 20, 22.

Mr. Cargile alleges throughout his Complaint that when Chase advanced him "overdraft credits" to cover the non-sufficient funds ("NSF") checks, it was extending him credit, and the insufficient funds and extended overdraft fees constituted interest on that credit. Based on that theory, he alleges that the interest charged was higher than the rate permissible under the National Banking Act, 12 U.S.C. § 85. *Id*. ¶¶ 4,9. He brings two claims: (1) Violation of Section 85 of the National Bank Act (12 U.S.C. § 85), and (2) Fraud Resulting in Financial Loss.

In its summary judgment motion, Defendant Chase contends that the overdraft charges and NSF fees "do not constitute interest as defined by 12 C.F.R. § 7.4001(a)," and therefore both the Banking Act claim and the fraud claim must fail. *Motion for Summary Judgment*, p.1. Attached to Defendant's motion as Exhibit A are portions of the transcript of Mr. Cargile's deposition, in which he acknowledges that he opened the three checking accounts at Chase, and that he received copies of "the bank's deposit account agreement, which includes all provisions that apply to this deposit account and other agreements and service terms for account analysis and other treasury management services if applicable, and agree[d] to be bound by the agreements and terms contained therein." Exhibit A, Transcript p. 15. Mr. Cargile testified that he was aware that Chase could charge a fee in the event that he overdrew his account, *id*. p. 16. He conceded that he overdrew his accounts, and was usually, but not always, charged a fee. He said that on some occasions Chase refunded overdraft fees to him. *Id*. pp.20, 40.

Mr. Cargile's signature cards from the three accounts in question are attached to Defendant's motion as Exhibit B. They purport to contain Mr. Cargile's acknowledgment

of his receipt of Chase's deposit account agreement, including all provisions to deposit accounts, and that he "agree[s] to be bound by the agreements and terms contained therein."

Defendant's Exhibit C is a copy of Chase's Account Rules and Regulations. At page 4, under the section labelled "Withdrawals from you Checking or Savings Account," ¶ 3 provides as follows:

> "3. Insufficient Funds: If you don't have enough funds available in your account to cover your checks or any other withdrawals, one of these two things will happen depending on your specific account:
>
> – We pay the check or other withdrawal and charge an Insufficient Funds fee to the account.
>
> – We return the check or withdrawal unpaid and charge a Returned Item fee to the account."

The Rules and Regulations further provide, at p. 10:

> "We have no obligation to pay or honor any item or withdrawal request unless it is drawn or requested against available funds credited to your Account at the opening of business on the day the items presented for payment or the request is received, even if we paid an item or honored a withdrawal request drawn or requested against insufficient funds in the past. If we pay an item or honor your request that overdraws your Account, a deposited item has been returned unpaid, or for any other reason your Account has become overdrawn, you agree to pay the amount of the overdraft together with any fee and accrued interest identified in this Agreement immediately, whether or not you signed or requested the withdrawal or participated in the transaction creating the overdraft."

Defendant's Exhibit D is the Chase Fee Schedule, which includes notice of the fees charged for insufficient funds or returned items, ranging from $25.00 for a first occurrence to $35.00 for fifth and subsequent occurrences during the current month and the preceding 12 months.

Defendant's Exhibit E is the affidavit of Laurie L. Deck, a Vice-President and Product Manager for Chase. She states, on personal knowledge, that the Account Rules and Regulations reflected in Exhibit C were amended in 2008, and all Chase customers

that held deposit accounts were advised of the revisions. In addition, the fee schedule reflected in Exhibit D was revised as of March 1, 2007, and all customers that held personal and business deposit accounts were so advised.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to

defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

Both counts of Mr. Cargile's complaint rise or fall on the question of whether NSF or overdraft charges to a deposit account constitute "interest" on credit, under the National Banking Act. The overwhelming weight of authority squarely rejects Mr. Cargile's arguments, holding that such charges are not interest.

The National Banking Act, 12 U.S.C. § 85, provides that a nationally chartered bank "may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, *interest* at the rate allowed by the laws of the State, Territory, or District where the bank is located...." (Emphasis added). The term "interest" is defined in regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). Specifically, 12 C.F.R. § 7.4001(a) defines "interest," as used in the National Banking Act as follows:

> "[A]ny payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds...."

This regulation, which was revised in 2001, makes it clear that an NSF fee constitutes "interest" only when a *borrower* tenders an insufficient funds check to a creditor *in payment of a previous debt*. In his complaint, the Plaintiff relies on the

previous version of § 7.4001(a), which contained some ambiguity regarding NSF checks. As the OCC explained in revising the regulation, its use of the term "NSF fees" does not apply to overdraft charges to a deposit account:

> "The inclusion of 'NSF' fees in the definition of 'interest' was intended to codify a position the OCC took in Interpretive Letter 452, issued in 1988. IL 452 concluded that charges imposed by a credit card bank on its customers who paid their accounts with checks drawn on insufficient funds were 'interest' within the meaning of section 85. The charges were referred to as 'NSF charges' in the letter. The term, however, also is commonly used to refer to fees imposed by a bank on its checking account customers whenever a customer writes a check against insufficient funds, regardless of whether the check was intended to pay an obligation due to the bank. These different uses of the term 'NSF' fees have created ambiguity about the scope of the term as used in Sec. 7.4001(a).
>
> "The proposal invited comments on a change to Sec. 7.4001(a) that would clarify that the term 'NSF fees' includes only those fees imposed by a creditor bank when a borrower attempts to pay an obligation to that bank with a check drawn on insufficient funds. *Fees that a bank charges for its deposit account services–including overdraft and returned check charges–are not covered by the term 'NSF fees' as that term is used in Sec. 7.4001(a)....Thus, we are clarifying the definition of 'interest' by stating in the final rule that interest includes creditor-imposed NSF fees that are charged when a borrower tenders payment on a debt with a check drawn on insufficient funds.*"

66 Fed. Reg. 34784, 34786-87 (July 2, 2001) (Emphasis added).[3] To further underscore the point, the OCC has also promulgated regulations providing that a "national bank may charge its customers *non-interest* charges and fees, *including deposit account service charges*." 12 C.F.R. 7.4002(a) (emphasis added).

In *Soto v. Bank of Lancaster County*, 2010 WL 1257666 (E.D.Pa.,2010), the court rejected the precise arguments raised by the Plaintiff in the present case, noting that:

> "...all courts which have addressed the issue have concluded that overdraft fees are not interest. *See In re Washington Mutual Overdraft Protection Litig.,* 2004 WL 5046210 (C.D.Cal. April 26, 2004), *aff'd in part, rev'd in*

---

[3] The Supreme Court has held that the OCC's interpretation of its regulations is entitled to substantial deference. *Smiley v. Citibank, N.A.*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996).

*part on other grounds,* 201 Fed.Appx. 409 (9th Cir.2006); *Nicholas v. Deposit Guar.Nat. Bank,* 182 F.R.D. 226,231 (S.D.Miss.1998); *Video Trax, Inc. v. Nations Bank, N.A.,* 33 F.Supp.2d 1041, 1050 (S.D.Fla.1998); *Terrell v. Hancock Bank,* 7 F.Supp.2d 812, 816 (S.D.Miss.1998). *Soto* at *1.

Likewise, the court in *Video Trax, Inc. V. Nations Bank, N.A.*, 33 F.Supp.2d 1041, 1050 (S.D. Fla. 1998), citing the earlier, "pre-clarification" version of 12 C.F.R. § 7.4001(a), held that "[b]ecause the [deposit account overdraft] fees were not imposed in connection with a credit transaction, the fees are not interest as defined by the Bank Act." Rather, the court held that "the fee arises from the terms of the deposit agreements, which incorporate the schedule of fees. These types of charges are addressed by 12 C.F.R. § 7.4002...."

The Plaintiff attempts to distinguish *Soto* and *Video Trax* by claiming that the Defendant only charged overdraft fees when it actually paid the NSF checks. In so arguing, however, the Plaintiff ignores page 4, ¶3 of Chase's Account Rules and Regulations, which provides that the bank can charge an overdraft fee regardless of whether the check is paid. *See* Defendant's Exhibit C. This was precisely the scenario in *Soto*, where the court stated, at *2:

> "Plaintiff attempts to distinguish [*Video Trax* and other cases] by noting that he alleges that BFC charged an overdraft fee only when an item was paid, and did not charge a fee when an item was not paid. Complaint at ¶¶ 11, 14. These allegations are contradicted by the plain terms of Plaintiff's Deposit Account Agreement, which provided that BLC had the right to charge an overdraft fee for each overdraft item presented regardless of whether BLC paid it or returned it."

The Plaintiff's abstruse and irrelevant discussion of the "fractional banking system" notwithstanding, he has not cited one case, statute or regulation that supports his claim that the overdraft fees Defendant imposed pursuant to the deposit account agreement are "interest" under the National Bank Act. To the contrary, the plain

-7-

language of the OCC's regulations refute that theory, as has every court that has considered the issue.

The Defendant is therefore entitled to summary judgment as to both counts.

### IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Date: November 23, 2010

# CERTIFICATE OF SERVICE

      I hereby certify on November 23, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on November 23, 2010: **Ozie Cargile**

                                              s/Michael E. Lang
                                              Deputy Clerk to
                                              Magistrate Judge R. Steven Whalen
                                              (313) 234-5217